EDMUND BURKE, Plaintiff in Error, *v.* JOHN S. SEELY *et al.*, Defendants in Error.

1. *Contracts — Sale of lands — Specific performance — Equity.* — A., in order to befriend B., permitted him to occupy one of his lots, and furnished him with lumber to build a small house upon it, with a verbal understanding that he would make a title if he received his pay. B. became insolvent, and failed to pay. The property was sold under execution and bought in by A., to whom the possession was surrendered by B. A remained in undisputed possession afterward. Four years subsequently, on an execution against B., his interest in the premises was levied on and sold; and C. being the purchaser, brought his bill for specific performance against A. *Held,* that C. had no claim to the property, even though the first execution sale were invalid.

2. *Specific performance, bills for.* — Bills for specific performance appeal to the conscience and discretion of the court.

Burke v. Seely et al.

*Error to First District Court.*

*Ewing & Smith*, for plaintiff in error.

*Draffen & Muir*, for defendants in error.

BLISS, Judge, delivered the opinion of the court.

In 1859, one Evans took possession of two town lots in Tipton, the property of W. T. Seely, now deceased, and built a house upon the same, the said Seely furnishing the greater part of the lumber. Evans testifies that he went into possession with the knowledge of Seely; that there was no writing between them; that he expected to pay what the lots were worth, but no price was agreed upon, while the answer of Seely's heirs admits that the price was $100; but it is undisputed that the contract was verbal, if one was made; that Evans paid nothing upon it, and that Seely advanced for the improvements lumber of the value of $417, for which he received no pay. It also appears that Evans became involved; that sundry judgments were rendered against him in 1862; that executions were issued and levied upon Evans' interest in the property; and in October, 1863, said interest was bid in by Seely for the sum of $250. The said Evans at once gave up to Seely his interest in and the possession of the property, in payment, as he says, of what he owed him, and the latter and his heirs have ever since been in undisputed possession of the same as owners thereof. It also appears that in December, 1866, new executions were issued upon all the judgments against Evans, and in March, 1867, his interest in said property was again sold and bid in by the plaintiff for $44.

The plaintiff in the present suit presents his petition to the Moniteau Circuit Court for a specific performance of the contract between Evans and Seely, claiming that the contract is in full force and that he is the owner of Evans' equity by virtue of his said purchase. He does not tender the purchase money or bring any money into court, but says he is willing to pay the original $100 and interest. There is no charge of fraud in any of the transactions pertaining to the lots, and the plaintiff relies

solely upon his equity as the purchaser of Evans' naked interest. The Circuit Court held that the first execution sales, under which Seely, in 1868, bid in Evans' interest, were irregular and passed no title, and gave the plaintiff a decree for specific performance. which was reversed in the District Court.

The judgment of reversal was correct; there is no equity in the plaintiff's case. Seely, in order to befriend Evans, permitted him to occupy one of his lots, and furnished him with lumber to build a small house, with the understanding that he would make a title if he received his pay. Evans could not pay, and the property was surrendered, and the contract, such as it was, was canceled. It matters not whether the sheriff's sale in 1863 were good or not. The plaintiff has no better claim than Evans would have had, and it will not be pretended that he, four years after the surrender and cancellation, could come in and enforce an alleged contract, which at best was of the most shadowy character. It is very doubtful whether Evans ever had such an equity as could be sold on execution, but he certainly did not have one four years after he had honestly given up all claim to the property. We do not suppose a debtor can surrender an interest, the proper subject of levy, for the purpose of placing, or so as to place it, beyond the reach of creditors; but if they would place themselves in the debtor's shoes, they should act more promptly, proceed at once to ascertain his interest, and perform his contract. Bills for specific performance appeal to the conscience and discretion of the court, and it would be altogether against conscience to take this property from the defendants and give it to the plaintiff upon payment merely of the $100 and interest.

The other judges concurring, the judgment of the District Court is affirmed.